IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DANIEL FELICIANO,

        Defendant.

Criminal No. 24-061-01

ELECTRONICALLY FILED

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's motion to dismiss Count Six of the superseding indictment – the § 922(g) - Felon in Possession of a Firearm charge. ECF 671. Defendant argues that the § 922(g) firearms charge is unconstitutional as applied to him. ECF 671, p.2 fn. 1. The Government has filed a response to this motion (ECF 683) making the matter ripe for disposition. For the reasons set forth herein, the motion will be denied.[1]

**I. BACKGROUND**

Count Six of the superseding indictment charges as follows:

Case 2:24-cr-00061-AJS   Document 409   Filed 09/24/24   Page 7 of 14

**COUNT SIX**

The grand jury further charges:

On or about March 14, 2024, in the Western District of Pennsylvania, the defendant, DANIEL FELICIANO, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, namely, aggravated assault, on or

---

[1] Because the Court writes primarily for the benefit of the parties, the relevant facts shall be truncated and incorporated into the analysis.

about May 28, 2002, at Criminal Number CIC2002G0025 in the Court of First Instance of Puerto Rico, Arecibo Chamber, Commonwealth of Puerto Rico, knowingly possessed, in and affecting interstate commerce, a firearm, to wit:

    (a)    a Glock, model 23, .40 S&W semi-automatic pistol bearing serial number BMTM574;

    (b)    a Springfield Armory, model Hellcat, 9mm semi-automatic pistol bearing serial number BY380060;

    (c)    a Ruger, model PC Charger, 9mm semi-automatic pistol bearing serial number 913-32734; and

    (d)    a Marlin Firearms, model 75C, .22 LR semi-automatic rifle bearing serial number 17464038;

and assorted quantities and brands of ammunition in the following calibers:

    (a)    7.62x39mm;

    (b)    5.56mm;

    (c)    .40 S&W;

    (d)    9mm;

    (e)    .45 ACP;

    (f)    .45 Colt;

    (g)    .22 LR;

    (h)    12 gauge; and

7

    (i)    .380 auto.

In violation of Title 18, United States Code, Section 922(g)(1).

## II. STANDARD OF REVIEW

"A federal indictment requires 'no greater specificity than the statutory language ... so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.' " *United States v. Keystone Biofuels*, 350 F. Supp. 3d 310, 318 (M.D. Pa. 2018), citing *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007). Indeed, "[i]n evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment." *United States v. Huet*, 665 F.3d 588, 595. "[A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Keystone Biofuels*, 350 F. Supp. 3d 310, 318 (M.D. Pa. 2018), citing *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000).

## III. ANALYSIS

### A. Defendant's Argument for Dismissal of Count Six

Defendant's as-applied constitutional challenge to his alleged violation of 18 U.S.C. § 922 (g)(1) at Count Six, argues that § 922 (g)(1)'s application to Defendant deprives him of his constitutional right to bear arms, thereby requiring the dismissal of Count Six. Defendant contends that this Court must dismiss Count Six of the superseding indictment due to "recent developments in Second Amendment law[.]" As noted above, Count Six charges Defendant who had been previously convicted of a felony offense (aggravated assault), as a felon who knew he was a felon, and knowingly possessed several firearms and a plethora of ammunition. The "recent developments in Second Amendment law" referenced by Defendant relate to several cases recently decided by the Supreme Court of the United States as well as the United States Court of Appeals for the Third Circuit – all of which will be discussed in greater detail, below.

Defendant further asserts that that he is only asserting an "as applied" challenge to the Section 922(g)(1) charge and is not arguing that the statute is unconstitutional on its face.

### A. Relevant Statutory and Second Amendment Law

Section 922(g)(1) reads in pertinent part:

> (g) It shall be unlawful for any person—
>
>> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>
> \*           \*           \*
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C.A. § 922(g)(1).

The Second Amendment of the United States Constitution reads that "[a] well regulated Militia, being necessary to the security of a free State, the right of people to keep and bear Arms, shall not be infringed."

In 2008, the Supreme Court of the United States made it clear that Second Amendment conferred an individual right to "keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008) ("There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms."). However, this individual right was carefully qualified by the Supreme Court in *Heller*, when the Court stated:

> Of course the right was not unlimited, just as the First Amendment's right of free speech was not, see*, e.g., United States v. Williams*, 553 U.S. 285, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose.

4

*Id.* In sum, the *Heller* decision protected an individual's right to keep and bear arms for limited purposes, specifically home protection.

Two years after *Heller*, the Supreme Court decided a case brought by individuals who sued Chicago and its suburb of Oak Park for enacting laws effectively banning handgun possession by almost all private citizens. *McDonald v. City Chicago, Illinois*, 561 U.S. 742 (2010). The Supreme Court first noted that in a much earlier decision, the Court had "decisively held that incorporated Bill of Rights['] protections are all to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment." *Id*., at 763, citing *Malloy v Hogan,* 378 U.S. 1 (1964). In *McDonald*, the Court considered:

> whether the Second Amendment right to keep and bear arms is incorporated in the concept of due process. In answering that question, as just explained, we must decide whether the right to keep and bear arms is fundamental to our scheme of ordered liberty, *Duncan*, 391 U.S., at 149, 88 S.Ct. 1444, or as we have said in a related context, whether this right is "deeply rooted in this Nation's history and tradition," *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2302, 138 L.Ed.2d 772 (1997) (internal quotation marks omitted).

561 U.S. at 765. Looking to its 2008 decision in *Heller*, the Court concluded, "the need for defense of self, family, and property is most acute in the home . . . we found that this right applies to handguns because they are the most preferred firearm in the nation to 'keep' and use for protection of one's home and family." *Id*. at 767 (some internal quotation marks omitted).

Next, in 2022, the Supreme Court, in *New York State Rifle & Pistol Ass'n v. Bruen*, held that the Second and Fourteenth Amendments not only protected the rights of "an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" but those same Amendments

would also afford "ordinary, law-abiding citizens [to] have a similar right to carry handguns publicly for their self-defense." *Bruen,* 597 U.S.1, 8-9 (2022) (emphasis added).[2]

Two years later, the Supreme Court in *United States v. Rahimi*, 602 U.S. 680 (2024), affirmed the denial of a criminal defendant's motion to dismiss his indictment, holding, "[w]hen a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may -- consistent with the Second Amendment -- be banned from possessing firearms while the order is in effect." 602 U.S. at 690.

Following the *Rahimi* decision, the United States Court of Appeals for the Third Circuit issued an *en banc* decision in *Range v. Att'y Gen. United States of Am.*, 124 F.4th 218 (3d Cir. 2024) ("*Range II*"). In *Range II*, the Court of Appeals decided through a declaratory judgment action that the plaintiff, Mr. Range, could not be prohibited from possessing firearms, because he had previously "pleaded guilty in the Court of Common Pleas of Lancaster County to one count of making a false statement to obtain food stamps in violation of Pennsylvania law." *Id.* at 222-23. Specifically, the Court of Appeals held that the Constitution would presumptively protect Mr. Range's proposed conduct, "to possess a rifle to hunt and a shotgun to defend himself at home" and further found that when the burden shifted to the Government to show that § 922(g)(1), prevented Mr. Range from keeping and bearing firearms, the Government was unable to show that a denial of this right "was part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 232.

---

[2] To put a finer point on these three cases – *Heller* and *McDonald* essentially determined that individual, law-abiding persons had a right to possess a handgun in the home for self-defense. *Bruen* went a step further noting that [law-abiding] persons had a right to carry a handgun outside the home for self-defense purposes.

6

**C. Application**

All of the precedential case law cited above guides this Court's analysis of the "as applied" challenge raised by Defendant to the gun charge brought against him in Count Six. "[T]he standard for bringing an as-applied challenge, is less demanding; a plaintiff need only show that a law's application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Handlovic*, No. 3:24-CR-207, 2025 WL 1085172, at *6 (M.D. Pa. Apr. 10, 2025) (internal quotations omitted). See also *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 134 & n.7 (3d Cir. 2022) (quoting *Salerno*, 481 U.S. at 745 then *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010)).

First, this Court will consider the **scope** of the record before the Court, and specifically Defendant's "as-applied" challenge to Section 922(g)(1). *United States v. Mollett,* No. 3:21-CR-16-21, 2025 WL 564885, at *4 (W.D. Pa. Feb. 20, 2025). As the District Court did in *Mollett,* this Court accepts as true the factual allegations set forth by the Government in Court Six of the superseding indictment. *Id. citing United States v. Huet* , 665 F.3d 558, 601 (3d Cir. 2012). This means that the Court accepts as true, that Defendant – knowing he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year (in his case, the crime of aggravated assault), knowingly possessed four firearms – three semiautomatic pistols and one semi-automatic rifle, along with assorted quantities and brands of ammunition. ECF 409. The Court also accepts as true that Defendant: in Count One, knowingly participated in a conspiracy to distribute five kilograms or more of cocaine; in Counts Two, Three and Five, knowingly possessed with the intent to distribute quantities of cocaine; and in Counts Four and Seven knowingly possessed firearms in furtherance of drug trafficking. ECF 409.

Second, in resolving Defendant's as-applied challenge to Section 922(g)(1), this Court also considers Defendant's criminal history. Defendant contends that although his "twenty-plus year old felony conviction involved an act of violence . . . the passage of time and the legal principles [which led the Court of Appeals] to rule in favor of the *Range [II]* plaintiff's Second Amendment rights, operate together to establish the unconstitutionality of applying 922(g)(1) . . . here." ECF 671. Conversely, the Government cites several United States District Court opinions which have consistently held that a person possessing a firearm while in furtherance of a drug trafficking crime would not fall within the Second Amendment's protection. ECF 683.

Considering these arguments, this Court turns to "the 'threshold question' of whether [the defendant] is one of "the people" protected by the Second Amendment . . .". *United States v. Handlovic*, No. 3:24-CR-207, 2025 WL 1085172, at *3 (M.D. Pa. Apr. 10, 2025). This Court notes that *Range II* rejected the blanket notion that "felons are not among 'the people' protected by the Second Amendment." *Range II*, 124 F.4th at 228.[3]

With the above factual allegations taken as true, the Court, in deciding the "threshold question" of whether Defendant deserves the protection of the Second Amendment, and thus, the right to possess the four semi-automatic weapons and ammunition described in Count Six, the Court turns to the two- part analysis of *Bruen*. First, the Court considers whether the "Second Amendment's plain text covers" Defendant's conduct. *Bruen*, 597 U.S. at 17. Although the parties may not dispute whether an individual challenging a firearms regulation is part of "'the

---

[3] The Government notes that that the factual basis for each of the cases relied upon by Defendant differ from the facts present here: *Range II*'s facts concerned a right to possess a rifle to hunt; the *Bruen* facts concerned an individual's right to carry a handgun for self-defense; and *Heller*'s facts concerned an individual's rights to keep a handgun in the home for protection. This Court also notes that on May 2, 2025, the Court of Appeals for the Third Circuit held that, "[w]e emphasized that our decision [in *Range II*] was a 'narrow one' based on Range's individual circumstances [a thirty-year old conviction for food stamp fraud] and the **lack of any sign** that 'Range poses a physical threat to others.'" *United States v. Goodnight,* No. 23-1882, 2025 WL 1276000, at *2 (3d Cir. May 2, 2025) (emphasis added).

people' whom the Second Amendment protects[,]" another inquiry must be satisfied before the burden shifts to the Government to justify the regulation at issue: Whether the Second Amendment "protects [the individual's] proposed course of conduct[.]" *Id.* at 31-2; *see also Heller*, 554 U.S. at 626 (explaining that the Second Amendment does not provide "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose"). See also, *Rahimi*, 602 U.S.at 692 ("[I]f a challenged regulation fits within [our historical tradition of firearm regulation], it is lawful under the Second Amendment. . . . if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations.").

In *Waulk*, a sister court to this Court noted that the other inquiry (*i.e.,* whether the Second Amendment protects a person's proposed course of conduct):

> . . . was easily satisfied in *Bruen*, where the proposed course of conduct was "carrying handguns publicly for self-defense." *Id.* But Waulk's constitutional challenge to § 922(g)(1), unlike *Bruen*, does not come by way of a civil suit seeking declaratory and injunctive relief with respect to proposed future conduct. *See id.* at 2125. Instead, Waulk challenges the constitutionality of § 922(g)(1) as he is currently charged with violating that law in a four-Count Indictment. Thus, Waulk's "actual conduct is the focus for analysis[.]" *United States v. McBroom*, No. 21-CR-97, 2023 WL 7221400, at *9 (W.D. Pa. Nov. 2, 2023). And the Court must take all factual allegations in the Indictment as true at this Rule 12 stage. *Huet*, 665 F.3d at 595.

*United States v. Waulk*, No. 3:20-CR-31-1, 2024 WL 3937489, at *5 (W.D. Pa. Aug. 26, 2024).

In *Waulk*, and in *United States v. Birry*, no. 23-CR-288, 2024 WL 3540989 (M.D. Pa. July 25, 2024), the District Courts held that possessing a firearm in furtherance of a drug trafficking crime does not constitute conduct protected by the Second Amendment. Furthermore, this Court also recognizes that in *Goodnight*, the United States Court of Appeals for the Third

9

Circuit found that a felon who had been previously convicted of heroin dealing and violating gun laws were "just such convictions" which demonstrate "dangerousness" so as to justify disarmament. *United States v. Goodnight,* No. 23-1882, 2025 WL 1276000, at *2 (3d Cir. May 2, 2025) ("Indeed, we have explained that drug trafficking is the kind of conviction that could justify disarmament because drug dealing risks violence." *See Pitsilides v. Barr*, 128 F.4th 203, 213 (3d Cir. 2025) (quoting *Folajtar v. Att'y Gen.*, 980 F.3d 897, 922 (3d Cir. 2020) (Bibas, J., dissenting)).

Turning back to the instant case, Defendant, here, was formerly convicted of a crime of violence – aggravated assault. Thus, Defendant is not akin to the *Range II* defendant, who had been previously convicted of food stamp fraud – a non-violent offense. In addition, unlike the *Range II* defendant, who failed to demonstrate **"any sign"** that he posed a physical threat to others, Defendant, here, (given the allegations set forth in Count Six and all of the indictment's additional allegations, which this Court must accept as true), demonstrates that he poses a serious physical threat to others.

This Court concludes that Defendant – who was previously convicted of aggravated assault, a crime of violence – is now accused of the following conduct: (1) one count of conspiracy to distribute and possess with intent to distribute cocaine; (2) two counts of possession with intent to distribute and distribution of cocaine; and (3) two counts of possessing a firearm in furtherance of a drug trafficking crime. The Court concurs with the decisions in *Waulk* and *Birry*, that these facts "cannot be divorced from the analysis of [§] 922(g)(1)[.]" *Waulk* at *5, quoting *Birry* at *11. Thus, while Defendant in this case like the defendants in *Waulk* and *Birry* may be among "the people" protected by the Second Amendment, it is Defendant's **conduct,** which is accepted as true, that is at issue in the present case. Defendant's

10

conduct consists of conspiring to traffic drugs and possessing four firearms and ammunition in furtherance of drug trafficking crimes place him firmly "outside the ambit of the 'conduct' to which the Second Amendment's protection applies." *Waulk* at *5, quoting, *Bruen*, 142 S. Ct. at 2134.[4]

## IV. CONCLUSION

The offense charged in Count Six, coupled with the allegations set forth in the remainder of the indictment brought against Defendant unequivocally demonstrate the Second Amendment does not apply to Defendant, and thus, the Court will deny Defendant's motion to dismiss.

## ORDER

AND NOW, this 16th day of May 2025, the Court DENIES Defendant's motion to dismiss Count Six of the Superseding Indictment (ECF 671).

By the Court,

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:   All counsel of record

---

[4] The District Court in *Mollett* also denied a defendant's motion to dismiss a Section 922(g)(1) firearms charge because that indictment – like the one present in the instant case – contained allegations of drug trafficking conspiracy and possession of a firearm in furtherance of the drug trafficking. But Mollett, unlike Defendant, here, had a more recent track record of violent felonies. Still, this detail does change the fact that Defendant's alleged **conduct** in the instant case, taken as true, is what provides this Court with the foundation to deny his request that the firearm charge in Count Six be dismissed.